1    PETER J. SALMON (SBN 174386)
THOMAS N. ABBOTT (SBN 245568)
2    PITE DUNCAN, LLP
4375 JUTLAND DRIVE, SUITE 200
3    P.O. BOX 17935
SAN DIEGO, CA 92177-0935
4    TELEPHONE: (858) 750-7600
FACSIMILE: (619) 590-1385
5    E-Mail: tabbott@piteduncan.com

6    Attorneys for Defendants JPMORGAN CHASE BANK, N.A., as acquirer of certain assets and liabilities of Washington Mutual Bank from the Federal Deposit Insurance Corporation, as
7    Receiver for Washington Mutual Bank [*erroneously sued as JP MORGAN CHASE BANK, As Successor in Interest to, and d/b/a, WASHINGTON MUTUAL BANK, FA, and d/b/a CHASE*
8    *HOME FINANCE, LLC*] AND FEDERAL HOME LOAN MORTGAGE CORPORATION

9    **UNITED STATES DISTRICT COURT**

10    **EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO**

| | |
|---|---|
| 11   FAIZ A. JAHANI, an individual, and KHADIJA JAHANI, an individual, | Case No. |
| 12         Plaintiffs, | **NOTICE OF REMOVAL OF ACTION** |
| 13      v. | **[12 U.S.C. § 1452(f)]** |
| 14 | |
| 15   JP MORGAN CHASE BANK, As Successor in Interest to, and d/b/a, WASHINGTON | |
| 16   MUTUAL BANK, FA, and d/b/a CHASE HOME FINANCE, LLC; FEDERAL HOME | |
| 17   LOAN MORTGAGE CORPORATION; QUALITY LOAN SERVICE | |
| 18   CORPORATION, JEFFERY SCOTT STRACHAN; RUDOLFP TAN OMEGA; and | |
| 19   DOES 1 through 100, inclusive, | |
| 20         Defendants. | |

21    **TO THE CLERK OF THE ABOVE-ENTITLED COURT, TO THE PARTIES AND**

22    **THEIR ATTORNEYS OF RECORD:**

23      **PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. § 1331 & 1442, and 12 U.S.C. §

24    1452(f), Defendant FEDERAL HOME LOAN MORTGAGE CORPORATION ("Freddie Mac")

25    hereby gives notice of the removal of this action from the Superior Court of California in and for

26    Sacramento County, where it was pending, to the United States District Court for the Eastern District

27    of California. As grounds for this removal, Freddie Mac shows unto the Court the following:

28    /./.

1     1.    The Plaintiffs FAIZ A. JAHANI and KHADIJA JAHANI, commenced this action

2  against Freddie Mac and others in the Superior Court of California in and for Sacramento County,

3  on or about February 1, 2011 as Case No. 34-2011-00096173 ("State Court Action"). Plaintiffs'

4  Complaint alleges various causes of action against Freddie Mac and others in connection with certain

5  real property known as 9021 Bramblewood Way, Elk Grove, CA 95758 in Sacramento County,

6  California.

7     2.    Freddie Mac is a United States corporation chartered by an Act of Congress organized

8  and existing under the Federal Home Loan Mortgage Corporation Act, 12 U.S.C. § 1451, et seq.,

9  with its principal place of business located in McLean, Virginia.

10     3.    12 U.S.C. § 1452(f) provides that Freddie Mac "shall be deemed to be an agency

11  included in sections 1345 and 1442 of such Title 28." Section 1452(f) of Title 12 further provides,

12  in pertinent part, that any civil action in a state court to which Freddie Mac is a party may, at any

13  time before trial, be removed to the appropriate United States District Court.

14     4.    28 U.S.C. § 1442(a) does not require Freddie Mac to notify or obtain the consent of

15  any other defendant in this action in order to remove the entire case to federal court. See 28 U.S.C.

16  1442(a); Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1253 (9th Cir. 2006) (stating that

17  "[w]hereas all defendants must consent to removal under section 1441…, a federal officer or agency

18  defendant can unilaterally remove a case under section 1442…") (citations omitted); Ely Valley

19  Mines, Inc. v. Hartford Accident & Indemnity Co., 644 F. 2d 1310, 1315 (9th Cir. 1981) (stating that

20  "§ 1442 represents an exception to the general rule (under §§ 1441 and 1446) that all defendants

21  must join in the removal petition").

22     5.    Freddie Mac is a party to the State Court Action as referenced above, and no trial of

23  the action has yet taken place. The United States District Court for the Eastern District of California

24  is the federal judicial district and division embracing Sacramento County in which the property at

25  issue in this case is situated. See 28 U.S.C. § 84(b). Attached hereto as **Exhibit A,** and incorporated

26  by reference herein, are copies of all records and proceedings from the State Court Action including

27  the Summons, Complaint and Civil Case Cover sheet.

28  /././

NOTICE OF REMOVAL OF ACTION

2327182.wpd

6.    Concurrently with the filing of this Notice of Removal, by means of the Notice to Adverse Parties of Removal filed in the State Court Action and attached hereto as **Exhibit B**, Freddie Mac is giving written notice to all known parties, and to the Superior Court of California in and for Sacramento County, of (i) this removal; (ii) the fact that this case is to be docketed in this Court; and (iii) that this Court shall hereafter be entitled to grant all relief to Freddie Mac as is proper under the circumstances, all in accordance with 12 U.S.C. § 1452 and such local rules as may be applicable.

Respectfully Submitted,

Dated: February 24, 2011

PITE DUNCAN, LLP

Thomas N. Abbott
Attorneys for Defendants JPMORGAN CHASE BANK, N.A., as acquirer of certain assets and liabilities of Washington Mutual Bank from the Federal Deposit Insurance Corporation, as Receiver for Washington Mutual Bank [*erroneously sued as JP MORGAN CHASE BANK, As Successor in Interest to, and d/b/a, WASHINGTON MUTUAL BANK, FA, and d/b/a CHASE HOME FINANCE, LLC*] AND FEDERAL HOME LOAN MORTGAGE CORPORATION

# EXHIBIT A

**EXHIBIT B**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state Bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| Matthew Mellen, Esq (SBN 233350)<br>White \| Mellen<br>5600 H Street, Suite 100<br>Sacramento, CA 95819 | |

TELEPHONE NO (916) 594-7241  FAX NO
ATTORNEY FOR *(Name)* Plaintiffs, Faiz A. Jahani & Khadija Jahani

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Sacramento
STREET ADDRESS 720 9th Street
MAILING ADDRESS
CITY AND ZIP CODE Sacramento, CA 95819
BRANCH NAME

FILED
Superior Court Of California,
Sacramento
02/01/2011
Whitfield
By _____, Deputy
Case Number:

CASE NAME
Jahani, et al. vs. JPMorgan Chase Bank, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER 34-2011-00096173 |
|---|---|---|---|---|
| [✓] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal Rules of Court, rule 3 402) | | |
| | | | | JUDGE<br><br>DEPT |

*Items 1–6 below must be completed (see instructions on page 2)*

1 Check **one** box below for the case type that best describes this case

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [✓] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3 740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3 400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2 This case [ ] is [✓] is not  complex under rule 3 400 of the California Rules of Court If the case is complex, mark the factors requiring exceptional judicial management

a [ ] Large number of separately represented parties
b [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
c [ ] Substantial amount of documentary evidence
d [ ] Large number of witnesses
e [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
f [ ] Substantial postjudgment judicial supervision

3 Remedies sought *(check all that apply)* a [✓] monetary  b [✓] nonmonetary, declaratory or injunctive relief  c [✓] punitive
4 Number of causes of action *(specify)* 9
5 This case [ ] is [✓] is not  a class action suit
6 If there are any known related cases, file and serve a notice of related case *(You may use form CM-015)*

Date January 31, 2011
Matthew Mellen, Esq.
_____
(TYPE OR PRINT NAME)                    ▶

_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code) (Cal Rules of Court, rule 3 220 ) Failure to file may result in sanctions
- File this cover sheet in addition to any cover sheet required by local court rule
- If this case is complex under rule 3 400 et seq of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding
- Unless this is a collections case under rule 3 740 or a complex case, this cover sheet will be used for statistical purposes only

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal Rules of Court, rules 2 30, 3 220, 3 400–3 403, 3 740,
Cal Standards of Judicial Administration, std 3 10
www.courtinfo ca gov

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) (*if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto*)

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability (*not asbestos or toxic/environmental*) (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) (*not civil harassment*) (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract (*not unlawful detainer or wrongful eviction*)
  Contract/Warranty Breach–Seller Plaintiff (*not fraud or negligence*)
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage (*not provisionally complex*) (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property (*not eminent domain, landlord/tenant, or foreclosure*)

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential*)

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims (*arising from provisionally complex case type listed above*) (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment (*non-domestic relations*)
  Sister State Judgment
  Administrative Agency Award (*not unpaid taxes*)
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified above*) (42)
  Declaratory Relief Only
  Injunctive Relief Only (*non-harassment*)
  Mechanics Lien
  Other Commercial Complaint Case (*non-tort/non-complex*)
  Other Civil Complaint (*non-tort/non-complex*)

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition (*not specified above*) (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

See Additional Parties Attachment

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

FIAZ A. JAHANI, an individual and KHADJIA JAHANI, an individual

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**FILED**
Superior Court Of California,
Sacramento
02/01/2011
lwhitfield
By_____ , Deputy
**Case Number:**
**34-2011-00096173**

**NOTICE!** You have been sued The court may decide against you without your being heard unless you respond within 30 days Read the information below

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff A letter or phone call will not protect you Your written response must be in proper legal form if you want the court to hear your case There may be a court form that you can use for your response You can find these court forms and more information at the California Courts Online Self-Help Center (*www courtinfo ca gov/selfhelp*), your county law library, or the courthouse nearest you If you cannot pay the filing fee, ask the court clerk for a fee waiver form If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court

There are other legal requirements You may want to call an attorney right away If you do not know an attorney, you may want to call an attorney referral service If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program You can locate these nonprofit groups at the California Legal Services Web site (*www lawhelpcalifornia org*), the California Courts Online Self-Help Center (*www courtinfo ca gov/selfhelp*), or by contacting your local court or county bar association **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case The court's lien must be paid before the court will dismiss the case

*¡AVISO! Lo han demandado Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión Lea la información a continuación*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante Una carta o una llamada telefónica no lo protegen Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte Es posible que haya un formulario que usted pueda usar para su respuesta Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www sucorte ca gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia*

*Hay otros requisitos legales Es recomendable que llame a un abogado inmediatamente Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www lawhelpcalifornia org), en el Centro de Ayuda de las Cortes de California, (www sucorte ca gov) o poniéndose en contacto con la corte o el colegio de abogados locales AVISO Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso*

| The name and address of the court is<br>*(El nombre y dirección de la corte es)* Sacramento<br><br>720 9th Street, Sacramento, CA 95814 | CASE NUMBER<br>*(Número del Caso)* |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es)*
Matthew Mellen, White | Mellen, 5600 H Street, Suite 100, Sacramento, CA 95819 (916) 594-7241

| DATE FEB - 1 2011<br>*(Fecha)* | Clerk, by<br>*(Secretaria)* | , Deputy<br>*(Adjunto)* |
|---|---|---|

*For proof of service of this summons, use Proof of Service of Summons (form POS-010)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010))*

**NOTICE TO THE PERSON SERVED:** You are served
[SEAL]

1. ☐ as an individual defendant
2. ☐ as the person sued under the fictitious name of *(specify)*

3. ☐ on behalf of *(specify)*

   under ☐ CCP 416 10 (corporation)     ☐ CCP 416 60 (minor)
         ☐ CCP 416 20 (defunct corporation)     ☐ CCP 416 70 (conservatee)
         ☐ CCP 416 40 (association or partnership)     ☐ CCP 416 90 (authorized person)
         ☐ other *(specify)*
4. ☐ by personal delivery on *(date)*

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412 20, 465
www courtinfo ca gov

| SHORT TITLE<br>Jahani, et al. vs. JPMorgan Chase Bank, et al. | CASE NUMBER |
|---|---|

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons "Additional Parties Attachment form is attached "

**List additional parties** *(Check only one box  Use a separate page for each type of party )*

☐ Plaintiff  ☑ Defendant  ☐ Cross-Complainant  ☐ Cross-Defendant

JPMORGAN CHASE BANK, As successor in Interest to, and d/b/a WASHINGTON MUTUAL BANK, FA, and d/b/a CHASE HOME FINANCE, LLC; FEDERAL HOME LOAN MORTGAGE CORPORATION; QUALITY LOAN SERVICE CORPORATION; JEFFREY SCOTT STRACHAN; RUDOLFO TAN OMEGA; and DOES 1 through 100, inclusive

Page _____ of _____

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

Jamil L. White (Bar No. 244028)
Matthew Mellen (Bar No. 233350)
WHITE | MELLEN
5600 H Street, Suite 100
Sacramento, California 95819
Telephone: (916) 594-7241
Facsimile: (916) 594-7247

Attorneys for Plaintiffs
FAIZ A. JAHANI and KHADIJA JAHANI

FILED
Superior Court Of California,
Sacramento

02/01/2011
lwhitfield
By_____, Deputy
Case Number:
34-2011-00096173

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF SACRAMENTO

Department
Assignments

Case Management 39
Law and Motion 54
Minors Compromise 22

| | |
|---|---|
| FAIZ A. JAHANI, an individual, and KHADIJA JAHANI, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>JPMORGAN CHASE BANK, As Successor in Interest to, and d/b/a, WASHINGTON MUTUAL BANK, FA, and d/b/a CHASE HOME FINANCE, LLC; FEDERAL HOME LOAN MORTGAGE CORPORATION; QUALITY LOAN SERVICE CORPORATION; JEFFERY SCOTT STRACHAN; RUDOLFO TAN OMEGA; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR:**<br><br>1. **Fraud**<br>2. **Civil Conspiracy**<br>3. **Negligence**<br>4. **Breach of Fiduciary Duty**<br>5. **Violations of Business and Professions Code § 17200, et seq.**<br>6. **Violation of Civil Code § 2923.5**<br>7. **Breach of Oral Contract**<br>8. **Breach of Implied Covenant of Good Faith and Fair Dealing**<br>9. **Declaratory and Injunctive Relief**<br><br>**[JURY DEMANDED]** |

COME NOW, Plaintiffs FAIZ JAHANI and KHADIJA JAHANI ("Plaintiffs"), and allege against Defendants, and each of them, as follows:

### PRELIMINARY ALLEGATIONS

1.      Plaintiffs are, and at all times herein relevant were, a married couple residing in Sacramento, County of Sacramento.

2.     Plaintiffs bring this action against Defendants for damages, equitable and injunctive relief resulting from the Defendants' acts or omissions as set forth herein concerning and surrounding the residential mortgage loan transaction ("Subject Loan") and loan modification agreement on the Plaintiffs' residence, located at 9021 Bramblewood Way, Elk Grove, CA 95758 ("Subject Property").

3.     On about March 14, 2007, Plaintiffs signed a promissory note (the "note") in favor of WASHINGTON MUTUAL BANK, FA ("WaMu") in the amount of $340,000.00. As part of the same transaction, Plaintiffs also signed a deed of trust ("the deed") in favor of WaMu. This deed contains a provision for attorney's fees.

4.     As will be explained below, Plaintiffs were deceived and continue to be deceived by defendants and are now in a state of limbo. Because of Defendants' deceit and unwillingness to communicate honestly with Plaintiffs, Plaintiffs are unable to determine the status of their interest in their home and mortgage loan.

**THE PARTIES**

5.     Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, WaMu was a diversified financial marketing and/or services corporation engaged primarily in residential mortgage banking, loan servicing, and/or related businesses. WaMu is believed to have been a residential mortgage lender who sold and originated Plaintiffs' residential mortgage transaction and was the original beneficiary of the related deed of trust.

6.     Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, Defendant JPMORGAN CHASE BANK JPMORGAN CHASE BANK, Individually and As Successor in Interest to, and d/b/a, WASHINGTON MUTUAL BANK, FA, and d/b/a CHASE HOME FINANCE, LLC ("JPMORGAN") is a diversified financial marketing and/or services corporation engaged primarily in residential mortgage banking and/or related businesses. Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, Defendant JPMORGAN is a corporation regularly conducting business in the state of California. On or about September 25, 2008, JPMORGAN became the successor in interest to WaMu. Accordingly, all conduct performed by WaMu described herein this Complaint is

attributable to Defendant JPMORGAN. JPMORGAN has represented to Plaintiffs that it has the right to service Plaintiffs' loan and demand payments from Plaintiffs, a representation Plaintiffs deny.

7.     Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, Defendant FEDERAL HOME LOAN MORTGAGE CORPORATON ("FREDDIE MAC") is a public government sponsored enterprise engaged primarily in residential mortgage banking and/or related businesses. At some point, Defendant FREDDIE MAC became the successor in interest to, and beneficiary of, the Subject Loan. Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, Defendant FREDDIE MAC regularly conducts business in the State of California.

8.     Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, Defendant QUALITY LOAN SERVICE CORPORATION ("QUALITY") is a diversified financial marketing and/or services corporation engaged primarily in residential mortgage banking and/or related businesses. Defendant QUALITY is designated as the Trustee under the deed of trust for Plaintiffs' loan based on a Substitution of Trustee recorded on about May 27, 2009. Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, Defendant QUALITY is a corporation regularly conducting business in the State of California.

9.     Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, Defendant JEFFERY SCOTT STRACHAN ("STRACHAN") was a mortgage broker engaged primarily in the origination of residential mortgages and/or related businesses. On information and belief, Defendant STRACHAN was the mortgage broker of record for the Subject Loan. Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, Defendant STRACHAN is an individual residing in, and regularly conducting business in, the State of California.

10.     Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, Defendant RUDOLFO TAN OMEGA ("OMEGA") was a mortgage broker salesperson engaged primarily in the origination of residential mortgage and/or related businesses. On

information and belief, Defendant OMEGA was the agent and/or employee of STRACHAN, the mortgage broker for the loan. Plaintiffs are informed and believe, and thereon allege that at all times mentioned herein, Defendant OMEGA is an individual residing in, and regularly conducting business in, the State of California.

11.     The true names and capacities, whether individual, corporate, associate or otherwise of Defendants named herein as DOES 1 through 100 are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names, and Plaintiffs will amend this Complaint to show their true names, involvement and capacities when the same has been ascertained. Plaintiffs are informed and believe, and on that basis allege, that each of the Defendants named herein as DOE was in some manner responsible for the harm and losses suffered by Plaintiffs and/or will be responsible for future harm and losses to Plaintiffs.

12.     Whenever reference is made in this Complaint to any act of any corporate or other business Defendant, that reference shall mean that the corporation or other business did the acts alleged in this Complaint through its officers, directors, employees, agents and/or representatives while acting within the actual and ostensible scope of their authority.

13.     Defendants, and each of them, at all times herein relevant, regularly engaged, and engage, in business in the State of California, County of Sacramento, and regularly provided, and provide, mortgage loans and related services. The majority of the transactions and events which are the subject matter of this Complaint occurred within the County of Sacramento, State of California.

14.     Plaintiffs are informed and believe, and thereon allege, that at all relevant times WaMu and Defendants STRACHAN, OMEGA and DOES 1-25 were the actual and apparent agents of one another, and in doing the things herein alleged, were acting within the course and scope of their actual and apparent agency and with the knowledge, notification, consent and ratification of each other.

15.     Plaintiffs are informed and believe, and thereon allege, that at all relevant times Defendants JPMORGAN, FREDDIE MAC, QUALITY and DOES 26-50 were the actual and apparent agents of one another, and in doing the things herein alleged, were acting within the

course and scope of their actual and apparent agency and with the knowledge, notification, consent and ratification of each other.

### ALLEGATIONS PERTAINING TO FRAUD IN THE LOAN ORIGINATION

16.     In or about February of 2007, Plaintiffs hired Defendant OMEGA, who represented himself to be a mortgage broker, to obtain a refinance mortgage loan for Plaintiffs' home, the subject property.

17.     In or about February 2007, and after some initial discussions, OMEGA represented to Plaintiffs that he could obtain for them a fixed rate fixed payment refinance loan from WaMu.

18.     On or about March 13, 2007, OMEGA came to the property to have Plaintiffs sign what he represented were loan closing documents for the fixed rate fixed payment loan he described to them.

19.     Plaintiffs were rushed when signing the documents. The closing process provided no time for review and took minutes to accomplish.

20.     In his haste to close the loan, knowing he had misrepresented its terms, Defendant OMEGA came to Plaintiffs' home alone and flipped through the documents, merely showing Plaintiffs where to sign.

21.     The deed of trust for the subject loan, however, contains a certificate of notarization stating that Plaintiffs appeared before Stacey Nappen, a notary public of the State of California, County of Sacramento, notary commission number 1707500 (hereinafter "Nappen") when signing the loan documents.

22.     Furthermore, Plaintiffs were never explained, among other things, the full terms of their loan, including the interest rate, how the interest rate would be calculated, and what the payment schedule would be and the risks and disadvantages of the loan.

23.     Plaintiffs signed the documents based on representations and the trust and confidence the Plaintiffs placed in OMEGA and WaMu.

24.     A determination of whether Plaintiffs would be able to make the payments as specified in the loan was never truly made.

25. It is clear that WaMu trained, incentivized, and encouraged Defendants STRACHAN and OMEGA to engage in this fraudulent conduct. Plaintiffs were qualified for a refinance loan with much better terms than the loan they were unknowingly duped into signing for. For placing Plaintiffs in this loan, STRACHAN and OMEGA received yield spread premium (broker rebate) from WaMu.

26. Had Plaintiffs known that STRACHAN and OMEGA would receive an additional fee and obtain a secret personal profit for putting them in a worse loan then they qualified for, they would not have agreed to accept the loan.

27. Furthermore, had Plaintiffs known that the loan was an adjustable rate loan, they would not have agreed to accept the loan.

## DEFENDANTS' UNLAWFUL ACTS IN THE FORECLOSURE PROCESS

28. In about December of 2008, Plaintiffs contacted JPMORGAN to discuss obtaining a loan modification. At this time, Plaintiffs were current on their mortgage payments and still unaware of the wrongful conduct of WaMu, STRACHAN, OMEGA and Nappen.

29. JPMORGAN's representative stated that Plaintiffs could only obtain a loan modification if they were three or more months delinquent in their mortgage payments and specifically told them to become three months behind in their mortgage payments.

30. In about February of 2009, after becoming three months behind in mortgage payments per the instructions of JPMORGAN's representative, Plaintiffs again contacted JPMORGAN. Then, in about March of 2009, Plaintiffs submitted all paperwork asked for by JPMORGAN to initiate the loan modification process.

31. On or about June 5, 2009, Plaintiffs received a letter from FREDDIE MAC congratulating Plaintiffs for qualifying for a loan modification. Pursuant to this loan modification agreement, Plaintiffs were to make three payments of $1,240.00 in July, August and September of 2009.

32. Pursuant to this loan modification agreement, Plaintiffs began making their new payments on about July 1, 2009.

33.     Next, on or about July 10, 2009, Plaintiffs received a letter from FREDDIE MAC stating that it owned Plaintiffs' loan and that JPMORGAN had notified it that Plaintiffs were delinquent on their mortgage payments. This letter made no reference to any current foreclosure proceedings instituted against Plaintiffs. However, as will be explained below, these proceedings had already begun.

34.     Despite the above representations, Defendants JPMORGAN and FREDDIE MAC instructed their agent and co-conspirator QUALITY to record a Notice of Default ("NOTICE OF DEFAULT") on about April 14, 2009 and later a Notice of Trustee's Sale ("NOTICE OF SALE"). JPMORGAN's statements to Plaintiffs were, therefore, merely a device to buy JPMORGAN, FREDDIE MAC and QUALITY time to consummate a foreclosure that they had themselves *engineered*.

35.     The arrears only existed because of the false representations of Defendants mentioned above. At all relevant times, Plaintiffs had the money to pay the arrears. However, Defendants JPMORGAN, FREDDIE MAC and QUALITY were more interested in wrongfully foreclosing on the property in order to obtain a windfall following the sale of Plaintiffs' home.

36.     To that end, no Defendant has complied with Civil Code § 2923.5 by speaking with Plaintiffs to determine their financial situation in order to explore alternatives to the foreclosure on the property in good faith.

37.     Defendant QUALITY is the trustee of the deed of trust. Defendant QUALITY wrongfully moved forward with this foreclosure despite the lack of any § 2923.5 compliance and the lack of any notice, in the form of a NOTICE OF DEFAULT or a NOTICE OF SALE.

38.     These facts reveal Defendants JPMORGAN and FREDDIE MAC's bad faith, and illuminate the role of Defendant QUALITY in the conspiracy to wrongfully foreclose on Plaintiffs' property.

39.     On about October 5, 2009, Plaintiffs received a letter dated October 2, 2009 from JPMORGAN stating that Plaintiffs' modification was at risk and that an urgent response from Plaintiffs was needed. It stated that it required further documentation that was not provided to JPMORGAN in the initial submission of loan modification paperwork.

40. On about October 7, 2009, Plaintiffs telephoned JPMORGAN asking why it claimed to not have received certain documents they had already sent. Plaintiffs spoke with a representative by the name of "Tracy" who indicated to Plaintiffs that JPMORGAN had in fact received all documentation required of Plaintiffs and to disregard the letter sent October 2, 2009 as it was sent in error.

41. On about October 20, 2009, Plaintiffs received another letter dated October 16, 2009 from JPMORGAN again stating that Plaintiffs' modification was at risk and that an urgent response from Plaintiffs was needed stating that it required further documentation that was not provided to JPMORGAN. Further, this letter, as was the case with all letters from JPMORGAN and FREDDIE MAC before or after it, made no mention of foreclosure proceedings instituted against the home.

42. Despite these letters, on about October 14, 2009, a purported "trustee's sale" of Plaintiffs' property was held.

43. There was no bona fide purchaser for value at the so-called "trustee's sale" on about October 14, 2009. The records reflect that FREDDIE MAC "sold" the property to itself, effectively stealing title from Plaintiffs.

44. Plaintiffs had no notice whatsoever of this so-called "sale." Plaintiffs believe that Defendants JPMORGAN and FREDDIE MAC made false promises to Plaintiffs that their loan would be modified.

45. Starting in about late October 2009, individuals began to approach Plaintiffs at their home indicating that the Subject Property had been sold at auction, that Plaintiffs were no longer the owners of the property and that these individuals were interested in purchasing it.

46. Each time this occurred, Plaintiffs became extremely upset.

47. The first time this occurred, Plaintiffs immediately telephoned JPMORGAN and were able to reach the same Tracy they had contacted in about early October 2009. Tracy stated that the house had not sold at auction and that the individuals approaching their home were trespassing. This representative then reassured Plaintiffs that the home had not sold at auction

and that it was still theirs. This representative told Plaintiffs to continue making their payments under the modification.

48. On or about January 31, 2010, Plaintiffs were sent yet another letter from JPMORGAN stating that their modification was at risk and that it required additional documentation.

49. On about February 1, 2010, JPMORGAN sent another letter to Plaintiffs acknowledging that the modification was in process.

50. Next, also on about February 1, 2010, Plaintiffs called JPMORGAN regarding their modification and were told by a JPMORGAN representative in the "REO" department that the property had indeed been sold at auction in October of 2009, that FREDDIE MAC took back the property and that Plaintiffs no longer owned it.

51. Plaintiffs were then transferred to representative "Janet" in JPMORGAN's "loss mitigation" department. Plaintiffs demanded to know why they had received statements every month since July 1, 2009, why JPMORGAN continued to accept Plaintiffs' payments and why it continued to demand documents for a loan modification. Plaintiffs further demanded to know why their house was listed as sold at auction and bank-owned. Plaintiffs also demanded JPMORGAN send it a payment history of Plaintiffs' payments.

52. Janet informed Plaintiffs that there was no sale of their property and stated that the sale was just a "mistake" on JPMORGAN's part and that records needed to be "updated." She stated the records would be "updated" within seven to ten days.

53. Janet further claimed that she, at that very moment, was sending e-mails and correspondence "everywhere" within the company to rectify the situation. She asked Plaintiffs to allow her time to clear up the misunderstanding.

54. Janet stated that a representative would review Plaintiffs' file and contact Plaintiffs within ten days.

55. Janet further stated that Plaintiffs would receive their permanent modification as promised when their file was reviewed by this representative.

56.     On or about February 10, 2010, Plaintiffs again contacted JPMORGAN to find out the status of their loan modification. Plaintiffs were able to contact representative "Denise" of JPMORGAN, who stated that she had no new information for Plaintiffs at that time.

57.     On or about February 12, 2010, Plaintiffs again contacted JPMORGAN and spoke with a representative named "Kristal" and demanded proof that JPMORGAN had received and cashed the payments they had made since July 2009. Kristal faxed Plaintiffs this payment history.

58.     On about February 13, 2010, Plaintiffs received another letter indicating they had failed to provide certain documents JPMORGAN required.

59.     Also, on about February 13, 2010, Plaintiffs received a telephone call from a representative of JPMORGAN named Brenda McDougal ("Brenda"). She stated that she was assigned Plaintiffs' file and that she would be working on their modification and that JPMORGAN *again* needed *all* the documents required for a loan modification to be resubmitted to her.

60.     Plaintiffs provided all information Brenda asked of them.

61.     On about February 22, 2010, Plaintiffs were told by Brenda that she had received all necessary paperwork for the modification.

62.     Plaintiffs had approximately four different calls with Brenda in about February of 2010. Each time she stated that Plaintiffs had a modification agreement in place but that JPMORGAN needed additional information from them.

63.     In or around the end of February 2010, Plaintiffs received two separate IRS forms 1098. One noted that Plaintiffs had paid $5,308.88 in mortgage interest for the 2009 tax year. The other stated that the property had been sold or abandoned by Plaintiffs.

64.     In about March of 2010, Plaintiffs contacted Brenda. Brenda stated that it was possible that Plaintiffs may have incorrectly filled out information on some forms it had asked for and that it was way too soon for her to provide any more information to Plaintiffs.

65.     In about June or July 2010, Plaintiffs received a letter informing them that their modification was denied.

66.     JPMORGAN's representatives never told Plaintiffs that it would not grant them a permanent loan modification as promised and that if they wanted to keep their home, Plaintiffs had to continue making regular mortgage payments. Instead, by telling Plaintiffs to re-submit documents for the loan modification, and by telling them they had a permanent modification in place, JPMORGAN and FREDDIE MAC lead Plaintiffs to believe that they indeed had a permanent loan modification in place.

67.     Plaintiffs now believe that JPMORGAN and FREDDIE MAC had no intention of modifying their loan because they intended to take Plaintiffs' home at the trustee's sale. Plaintiffs believe that JPMORGAN did not tell them to keep making their regular mortgage payments because it intended to create arrears and engineer a default on Plaintiffs' part which would allow JPMORGAN, FREDDIE MAC and QUALITY to foreclose on Plaintiffs' property.

68.     Plaintiffs would have cured the arrears had JPMORGAN or FREDDIE MAC informed them that they needed to do so in order to keep the property. Instead, JPMORGAN and FREDDIE MAC made false representations to Plaintiffs that they had a loan modification in place and failed to provide Plaintiffs with any notice of foreclosure proceedings as was required to be given to them.

69.     JPMORGAN's false statements and trickery prevented Plaintiffs from entering into the proposed loan modification, exercising their rights of redemption, being able to bid on their house at the sale, or from even verifying that the sale was conducted lawfully.

70.     Currently, Plaintiffs are in a state of limbo. Plaintiffs became aware that their home was sold at a foreclosure sale in October of 2009 when they received IRS forms from Defendants in about February 2010.

71.     The purported "trustee's sale" was rescinded in about April of 2010. However, since about June of 2010, Plaintiffs have received no communication whatsoever, whether in the form of mortgage statements or letters, from any of the Defendants.

72.     As a result of Defendants above-mentioned conduct, Plaintiffs are left with no option but to bring suit against Defendants.

73. Plaintiffs have been, and will continue to be, seriously injured unless Defendants' collection and/or threatened foreclosure proceedings and other activities complained of are not preliminarily and permanently enjoined. Plaintiffs will suffer irreparable injury of a continuing nature that cannot be adequately calculated or compensated in money damages because of ongoing collection activity on the loan and foreclosure proceedings against Plaintiffs' residence.

74. The deed of trust, under color of which Defendants JPMORGAN, FREDDIE MAC and QUALITY wrongfully foreclosed upon Plaintiffs' home, contains a provision for attorney's fees.

## ALLEGATIONS PERTAINING TO APPLICABLE STATUTES OF LIMITATIONS

75. As to any applicable or relevant statute of limitations the doctrines of discovery and equitable tolling apply as follows:

76. Plaintiffs did not notice the loan was adjustable and did not realize that the loan terms had been misrepresented until Plaintiffs obtained legal counsel and Plaintiffs' loan documents were reviewed. This occurred in about February of 2010.

77. Plaintiffs learned that their home may have sold at a trustee's sale in about October of 2009 when they received IRS forms from Defendants in February of 2010. It was not until April of 2010, when told by their counsel and after being showed the Notice of Rescission of Trustee's Deed Upon Sale ("NOTICE OF RESCISSION") that they had confirmation that the property was indeed sold.

78. It was until about June of 2010 that Plaintiffs were told that they did not have a loan modification in place.

79. Plaintiffs' Complaint is therefore timely.

### FIRST CAUSE OF ACTION
### FRAUD
### (Against All Defendants)

80. Plaintiffs incorporate by reference the allegations set forth above and below.

81. Defendants conduct, as alleged above, constitutes fraud.

82. Plaintiffs' specific allegations constitute a misrepresentation and/or concealment of material fact, and/or an act designed to deceive.

83. As alleged above, Defendants knowingly and recklessly made false and misleading statements on which Plaintiffs relied on to their detriment, and by which they were damaged thereby.

84. JPMORGAN's representatives' statements that they would grant Plaintiffs a loan modification after making three trial payments constituted false statements as JPMORGAN and FREDDIE MAC never intended to modify Plaintiffs' loan. JPMORGAN representatives encouraged Plaintiffs to continue seeking a loan modification instead of advising them to either make their regular payments or to cure the default they engineered in order to remain in their home.

85. In fact, each and every communication between Plaintiffs and JPMORGAN's representatives was designed by JPMORGAN and FREDDIE MAC to maneuver Plaintiffs into a default situation and then to trick them into not having knowledge of the foreclosure sale of their property. JPMORGAN's statements made to Plaintiffs through its multiple representatives were false and designed to lull Plaintiffs into believing a loan modification was in place so that JPMORGAN, FREDDIE MAC and QUALITY could stealthily take Plaintiffs' property.

86. All of these representations made by each JPMORGAN's representatives were false and material and each Defendant knew that these material representations were false when made, or these material representations were made with reckless disregard for the truth.

87. JPMORGAN intended that Plaintiffs rely on these material representations.

88. Plaintiffs reasonably relied on said representations by making payments of $1,240 from about July 2009 to about January 2010 and following all instructions received by JPMORGAN's representatives. Further, Plaintiffs reasonably relied on said representations by not continuing mortgage payments after December 2008. This resulted in their home being secretly foreclosed on. Plaintiffs were forced to endure the trauma of strangers repeatedly coming onto their property disturbing them and telling them their home was bank-owned while

1  JPMORGAN and FREDDIE MAC continued to tell them not to worry and that Plaintiffs' loan

2  had been modified.

3  89.    Plaintiffs seek equity from this Court restoring title to Plaintiffs, and precluding any

4  attempts by JPMORGAN, FREDDIE MAC and/or QUALITY to evict Plaintiffs prior to

5  adjudication of the claims herein.

6  90.    JPMORGAN and FREDDIE MAC, through their representatives, told Plaintiffs not to

7  make regular mortgage payments that would have brought their obligations under the fraudulent

8  loan current and stopped the foreclosure. Defendants JPMORGAN and FREDDIE MAC were

9  not interested in accepting such payments because they intended to foreclose on Plaintiffs

10 property from the beginning. The false representations to Plaintiffs were meant to buy time so

11 that the wrongful foreclosure process could continue.

12 91.    Plaintiffs' specific allegations evidence the role of Defendant QUALITY in conspiring

13 with Defendants JPMORGAN and FREDDIE MAC to defraud Plaintiffs.  As indicated therein,

14 Defendant QUALITY expedited the foreclosure proceedings on using a NOTICE OF

15 DEFAULT that was facially invalid.  Not only did Defendant QUALITY record this insufficient

16 NOTICE OF DEFAULT, but it also failed to serve this NOTICE OF DEFAULT or a NOTICE

17 OF TRUSTEE'S SALE on Plaintiffs.

18 92.    WaMu, through its agents and employees STRACHAN and OMEGA, represented to

19 Plaintiffs that the loan was a fixed rate fixed payment loan when in fact it was an adjustable rate

20 loan. Specifically, OMEGA represented to Plaintiffs that the loan would be at a fixed interest

21 rate with a payment that would never change when OMEGA intended to present Plaintiffs with

22 a *completely different* loan the day he came to their home and told them to sign closing

23 documents, along with an *initial* loan application.

24 93.    Likewise, Plaintiffs' specific allegations which state that WaMu, through agent and/or

25 employees STRACHAN and OMEGA, misrepresented to Plaintiffs that the documents he

26 brought to their home was for a fixed rate fixed payment loan that he had described to Plaintiffs,

27 constitute a misrepresentation of material fact and/or an act designed to deceive.

28

94.     Plaintiffs' specific allegations also evidence the role of WaMu in conspiring to train, encourage, and incentivize Defendants STRACHAN and OMEGA to fraudulently procure Plaintiffs' loan and home as security.

95.     WaMu, STRACHAN and OMEGA's failure to disclose the existence of yield spread premium (broker rebate), constituted a material non-disclosure.

96.     All of these misrepresentations and/or material non-disclosures made by each Defendant, as indicated above, were false and material. Each Defendant knew that these material representations were false when made, or that these material representations were made with reckless disregard for the truth.

97.     Defendants intended that Plaintiffs rely on these material misrepresentations and material non-disclosures, and they did, in fact, so rely.

98.     As a result of Plaintiffs' reliance, Plaintiffs are entitled to actual damages including, but not limited to, loss of money and property including but not limited to losses through overcharges and unlawfully unfavorable loan terms, incurred attorney's fees and costs to save their Property, a loss of reputation and goodwill, destruction of credit, severe emotional distress, loss of appetite, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness, and depression, according to proof at trial but within the jurisdiction of this Court.

99.     Plaintiffs seek further equity from this Court by restraining Defendants JPMORGAN, FREDDIE MAC and QUALITY from prosecuting a foreclosure sale on the Property, and precluding any attempts by these Defendants from demanding payments from or evicting Plaintiffs prior to full adjudication of the claims herein.

100.    As a proximate result of the Defendants' fraudulent conduct as herein alleged, Plaintiffs were duped and are now subject to the possibility of the loss of their family residence. Plaintiffs have suffered, and will continue to suffer, damages the exact amount of which have not been fully ascertained but are within the jurisdiction of this Court. Plaintiffs are entitled to incidental and consequential expenses and damages in an amount to be shown at the time of trial. In addition, Plaintiffs have been forced to retain a law firm to enforce their rights and have

incurred and will incur costs and reasonable attorneys' fees in connection herewith, recovery of which Plaintiffs are entitled to according to proof.

101. The Defendants' aforementioned conduct consisted of intentional misrepresentations, deceit, and/or concealment of material facts known to Defendants with the intention on the part of Defendants of thereby depriving Plaintiffs of property or legal rights or otherwise causing injury. Defendants, and each of them, acted fraudulently, maliciously and oppressively with a conscious, reckless and willful disregard, and/or with callous disregard, of the probable detrimental and economic consequences to Plaintiffs, and to the direct benefit of Defendants, knowing that Defendants conduct was substantially certain to vex, annoy, and injure Plaintiffs and entitle them to punitive damages under California Civil Code § 3294, in an amount sufficient to punish or make an example of Defendants.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as hereinafter set forth.

### SECOND CAUSE OF ACTION
### CIVIL CONSPIRACY
### (Against All Defendants)

102. Plaintiffs incorporate by reference the allegations set forth above and below.

103. Plaintiffs are informed and believe, and thereon allege, that Defendants conspired and agreed to implement a scheme to deceive and victimize Plaintiffs through the predatory lending practices and other unlawful conduct alleged herein.

104. Plaintiffs are informed and believe, and thereon allege, that Defendants did the acts and things alleged herein pursuant to, and in furtherance of, their conspiracy to deceive and victimize Plaintiffs as alleged herein.

105. The Defendants agreed amongst themselves to take the illegal and improper actions described herein, including taking actions that violated federal law and various common law duties, to reach their goal of maximizing their financial benefit at Plaintiffs' expense. The Defendants' actions were undertaken with actual malice in that they were motivated by a desire

1    to deceive Plaintiffs and cause Plaintiffs to be put in a position were they would likely lose their
2    property.

3    106.    Defendants, and each of them, committed the aforementioned acts pursuant to an
4    agreement by and between Defendants to deceive Plaintiffs into entering the Subject Loan
5    agreement and thereafter attempting to foreclose on the Subject Property without having any
6    right to do so. The purpose of their conspiracy was to rapidly generate a large volume of loans
7    that could be securitized, bundled and resold on Wall Street to third parties while insulating
8    Defendants from the effects of default and foreclosure on their balance sheets. Defendants used
9    these proceeds to fund additional fraudulent, unfair and unconscionable loans to additional
10    borrowers, which in turn were securitized and resold, perpetuating the cycle.

11    107.    Plaintiffs are informed and believe, and thereon allege, that Defendants sued herein
12    under fictitious names committed acts in furtherance of the conspiracy, and/or lent aid and
13    encouragement to their co-conspirators, and/or ratified and adopted the acts of their co-
14    conspirators, owed Plaintiffs a duty of care, and are thus jointly and severally liable for all harm
15    to Plaintiffs resulting from the conspiracy.

16    108.    As a proximate result of the Defendants' conduct, as herein alleged, Plaintiffs have
17    suffered, and will continue to suffer, damages, the exact amount of which have not been fully
18    ascertained but are within the jurisdiction of this Court. Plaintiffs are entitled to incidental and
19    consequential expenses and damages in an amount to be shown at the time of trial. In addition,
20    Plaintiffs have been forced to retain a law firm to enforce their rights and have incurred, and
21    will continue to incur, costs and reasonable attorneys' fees in connection herewith, recovery of
22    which Plaintiffs are entitled to according to proof.

23    109.    Defendants' aforementioned conduct consisted of intentional misrepresentations, deceit,
24    and/or concealment of material facts known to them with the intention on their part of thereby
25    depriving Plaintiffs of property or legal rights or otherwise causing injury. Defendants, and
26    each of them, acted deceptively, maliciously and oppressively with a conscious, reckless and
27    willful disregard, and/or with callous disregard, of the probable detrimental and economic
28    consequences to Plaintiffs, and to the direct benefit of Defendants, knowing Defendants'

conduct was substantially certain to vex, annoy, and injure Plaintiffs and entitle them to punitive damages under California Civil Code § 3294, in an amount sufficient to punish or make an example of Defendants.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as hereinafter set forth.

### THIRD CAUSE OF ACTION
### NEGLIGENCE
### (Against All Defendants)

110.     Plaintiffs incorporate by reference the allegations set forth above and below.

111.     JPMORGAN, FREDDIE MAC and QUALITY owed Plaintiffs a general duty not to record invalid documents on title of the Subject Property and a duty to comply with Civil Code §§ 2923.5 and 2924.

112.     As a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money.

113.     However, there are instances where the law imposes a duty on the lender as described herein in reference to WaMu. First, WaMu owed Plaintiffs a duty if it had an agency relationship with STRACHAN and OMEGA.  Second, WaMu owed Plaintiffs a duty if it exceeded its scope as a mere lender of money during the consummation of the Subject Loan. Third, WaMu owed Plaintiffs a duty if the following six factors favor Plaintiffs: (1) the extent to which the transaction was intended to affect Plaintiffs, (2) the foreseeability of harm to Plaintiffs, (3) the degree of certainty that Plaintiffs suffered injury, (4) the closeness of the connection between WaMu's conduct and the injury suffered, (5) the moral blame attached to WaMu's conduct, and (6) the policy of preventing future harm.

114.     In the present case, WaMu had an agency relationship with STRACHAN and OMEGA.

115.     In the present case, WaMu also exceeded its scope as a mere lender of money by, among other things, discarding traditional underwriting guidelines to sell more loans to feed the need on Wall Street for mortgages and to thereby increase WaMu's profit.

116. In the present case, WaMu owed Plaintiffs a duty based on the six-factor test. First, the transaction at issue was undoubtedly intended to affect Plaintiffs in that it determined what mortgage loan they would receive. Second, it was readily foreseeable that providing Plaintiffs with a loan with a with less beneficial terms would potentially harm Plaintiffs in that it increased the likelihood that they would default on the loan. Third, Plaintiffs' injury is also certain because they were placed in a less beneficial loan. Fourth, WaMu's conduct is closely connected to Plaintiffs' injuries because Plaintiffs would not have suffered injury had Plaintiffs not been duped into accepting the Subject Loan. Fifth, WaMu's conduct warrants moral blame because it conspired to get Plaintiffs into a loan WaMu knew Plaintiffs believed had a fixed rate, fixed payment, and better terms. Sixth, public policy will be better served if lenders, are prohibited from marketing and extending deceptive loans to borrowers.

117. Further, Defendants JPMORGAN and FREDDIE MAC owed duties to Plaintiffs as their conduct surrounding the loan modification and foreclosure exceeded the scope of a mere lender of money.

118. The loan modification agreement was intended to affect Plaintiffs in that it would determine the terms of their residential mortgage and whether they would reside in the Subject Property.

119. It was readily foreseeable that misrepresenting the details surrounding JPMORGAN and FREDDIE MAC's willingness to provide a loan modification and the foreclosure process without giving notice or allowing Plaintiffs to cure arrears that existed as direct result of JPMORGAN and FREDDIE MAC's misrepresentations would harm Plaintiffs.

120. The conduct of JPMORGAN, FREDDIE MAC and QUALITY from about December 2008 until about June 2010 warrants moral blame because these Defendants conspired to engineer a default on the part of Plaintiffs in order to foreclose on Plaintiffs' home.

121. Further, it is clear public policy will be better served if lenders are prohibited from engaging in such conduct.

122. As a proximate result of the conduct of Defendants, as herein alleged, Plaintiffs have suffered, and will continue to suffer, damages, the exact amount of which have not been fully

ascertained but are within the jurisdiction of this Court. Plaintiffs are entitled to incidental and consequential expenses and damages in an amount to be shown at the time of trial. In addition, Plaintiffs have been forced to retain a law firm to enforce their rights, and have incurred and will incur costs and reasonable attorneys' fees in connection herewith, recovery of which Plaintiffs are entitled to according to proof.

123. Defendants' aforementioned conduct consisted of intentional misrepresentations, deceit, and/or concealment of material facts known to them with the intention on their part of thereby depriving Plaintiffs of property or legal rights or otherwise causing injury. Defendants, and each of them, acted deceptively, maliciously and oppressively with a conscious, reckless and willful disregard, and/or with callous disregard, of the probable detrimental and economic consequences to Plaintiffs, and to the direct benefit of Defendants, knowing Defendants' conduct was substantially certain to vex, annoy, and injure Plaintiffs and entitle them to punitive damages under California Civil Code § 3294, in an amount sufficient to punish or make an example of Defendants.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, as hereinafter set forth.

## FOURTH CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY
### (Against Defendants JPMORGAN, STRACHAN and OMEGA)

124. Plaintiffs incorporate by reference the allegations set forth above and below.

125. At all times herein relevant, STRACHAN and OMEGA created, accepted and acted in a fiduciary relationship of great trust for Plaintiffs' alleged benefit.

126. Defendants, and each of them, further placed themselves in a position of trust by virtue of the expertise represented by and through their agents and employees.

127. Defendants, and each of them, breached their fiduciary duties owed to Plaintiffs by placing and negotiating loans without due care to Plaintiffs' best interest or for the protection of their rights, including by making false representations and failing to make material disclosures regarding the Subject Loan.

128.     As a result of Defendants' breach of fiduciary duties, Plaintiffs have suffered, and will continue to suffer, damages, the exact amount of which has not been fully ascertained but is within the jurisdiction of this Court.  Plaintiffs are entitled to incidental and consequential expenses and damages in an amount to be shown at the time of trial.  In addition, Plaintiffs have been forced to retain a law firm to enforce their rights and have incurred, and will continue to incur, costs and reasonable attorneys' fees in connection herewith, recovery of which Plaintiffs are entitled to according to proof.

129.     The Defendants' aforementioned conduct was made with the intention of thereby causing injury and despicable conduct subjecting Plaintiffs to a cruel and unjust hardship in a conscious disregard of Plaintiffs' rights.

130.     Plaintiffs are informed and believe, and on that basis allege, that Defendants, and each of them, acted fraudulently, maliciously and oppressively with a conscious, reckless and willful disregard, and/or with callous disregard, of the probable detrimental and economic consequences to Plaintiffs, and to the direct benefit of Defendants, knowing that Defendants' conduct was substantially certain to vex, annoy, and injure Plaintiffs and entitle them to punitive damages under California Civil Code § 3294, in an amount sufficient to punish or make an example of Defendants.

     **WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, as hereinafter set forth.

### FIFTH CAUSE OF ACTION
### VIOLATIONS OF BUSINESS AND PROFESSIONS CODE § 17200 et seq.
### (Against All Defendants)

131.     Plaintiffs incorporate by reference the allegations set forth above and below.

132.     Plaintiffs are informed and believe, and on that basis allege, that Defendants' acts, as alleged herein, constitute unlawful, unfair and/or fraudulent business practices, as defined by California Business and Professions Code § 17200 et seq.

133.     As a result of Defendants' wrongful conduct, Plaintiffs have suffered, and continue to suffer, damages and injuries in an amount subject to proof at trial.

134.    Plaintiffs seek restitution, disgorgement of sums wrongfully obtained, costs of suit, reasonable attorney's fees, and such other and further relief as the Court may deem just and proper.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as hereinafter set forth.

### SIXTH CAUSE OF ACTION
### VIOLATION OF CIVIL CODE § 2923.5
### (Against JPMORGAN and FREDDIE MAC)

135.    Plaintiffs incorporate by reference the allegations set forth above and below.

136.    Civil Code § 2923.5 requires, at least 30 days before a Notice of Default may be filed, that the borrower be contacted in person or by telephone to "assess" the borrower's financial situation and "explore" options to prevent foreclosure. The statute states, in relevant part: "(2) A mortgagee, beneficiary, or authorized agent shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure."

137.    Plaintiffs have an implied right of action under § 2923.5.

138.    A borrower need not tender the mortgage indebtedness as a prerequisite to bringing an action under § 2923.5.

139.    Plaintiffs were never contacted in person or by telephone to assess their financial situation and explore options to avoid foreclosure prior the date of the Notice of Default's filing.

140.    Furthermore, Plaintiffs did not receive a copy of the Notice of Default ten days after it was recorded as required by Civil Code § 2924b(b)(1).

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as hereinafter set forth.

### SEVENTH CAUSE OF ACTION
### BREACH OF ORAL CONTRACT
### (Against Defendants JPMORGAN and FREDDIE MAC)

141. Plaintiffs incorporate by reference the allegations set forth above and below.

142. In or about February of 2009, Plaintiffs and Defendant JPMORGAN entered into an oral agreement. By terms of this oral agreement, JPMORGAN would modify Plaintiffs' loan on condition that Plaintiffs make three trial payments in July, August, and September 2009.

143. The consideration agreed upon was fair and reasonable.

144. Plaintiffs have performed all conditions, covenants, and promises required by them on their part to be performed in accordance with the terms and conditions of the oral agreement with JPMORGAN. Specifically, Plaintiffs made the three payments in July, August, and September 2009 to JPMORGAN, and continued to do so through about January of 2010.

145. JPMORGAN breached the said oral agreement by purposefully failing to modify Plaintiffs' loan as JPMORGAN's representatives stated JPMORGAN would do.

146. Instead of modifying Plaintiffs' loan as promised, JPMORGAN's representatives made false and misleading representations to Plaintiffs that it would modify the loan. During this time, JPMORGAN and FREDDIE MAC requested more and more documents from Plaintiffs, with the intention of foreclosing on Plaintiffs' property in October of 2009. JPMORGAN breached its oral agreement with Plaintiffs by failing to grant them a permanent loan modification.

147. By reason of JPMORGAN's breach of said oral contract as alleged herein, Plaintiffs have had their home foreclosed on, the foreclosure sale rescinded, and suffered other damages, including but not limited to damage to their credit.

148. As a proximate result of the conduct of Defendants, as herein alleged, Plaintiffs have suffered, and will continue to suffer, damages, the exact amount of which have not been fully ascertained but are within the jurisdiction of this Court. Plaintiffs are entitled to incidental and consequential expenses and damages in an amount to be shown at the time of trial. In addition, Plaintiffs have been forced to retain a law firm to enforce their rights, and have incurred and will incur costs and reasonable attorneys' fees in connection herewith, recovery of which Plaintiffs are entitled to according to proof.

**WHEREFORE,** Plaintiffs pray for judgment against Defendants, and each of them, as

hereinafter set forth.

## EIGHTH CAUSE OF ACTION
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (Against Defendants JPMORGAN, FREDDIE MAC and QUALITY)

149.    Plaintiffs incorporate by reference the allegations set forth above and below.

150.    The loan agreement at issue included the written promissory note and deed of trust. Each of these agreements contained an implied covenant of good faith and fair dealing under which Defendants were obligated to refrain from engaging in any conduct the would prevent Plaintiffs from fully enjoying the benefits of these contracts.

151.    Defendants JPMORGAN, FREDDIE MAC and QUALITY breached the implied covenant of good faith and fair dealing.

152.    These Defendants refused to follow through with their duty to not interfere with Plaintiffs making their payments under the terms of the loan with the intent to continue receiving greater amounts of financial gain at the expense of Plaintiffs.

153.    Further, as members of the class of persons protected under Civil Code § 2923.5, Defendants' compliance with this statute was and remains a benefit to which Plaintiffs were entitled as an implied covenant of the loan agreements. However, in failing and refusing to comply with the foreclosure avoidance provisions of Civil Code § 2923.5, Defendants breached the subject loan agreements by the following: (1) failing to evaluate Plaintiffs financial condition regarding foreclosure avoidance; (2) failing to advise Plaintiffs of their statutory right to meet with Defendants regarding such foreclosure avoidance; and (3) failing to advise Plaintiffs of the toll-free HUD telephone number regarding counseling opportunities to avoid the subject foreclosure.

154.    Furthermore, Plaintiffs allege that Defendants reported filing of the NOTICE OF DEFAULT, NOTICE OF SALE and the foreclosure on the Subject Property to credit reporting agencies, and that such reporting damaged Plaintiffs' credit history and severely impaired Plaintiffs' ability to obtain consumer credit and home mortgage financing.

155.    As a proximate result of the conduct of Defendants, as herein alleged, Plaintiffs have suffered, and will continue to suffer, damages, the exact amount of which have not been fully ascertained but are within the jurisdiction of this Court. Plaintiffs are entitled to incidental and consequential expenses and damages in an amount to be shown at the time of trial. In addition, Plaintiffs have been forced to retain a law firm to enforce their rights, and have incurred and will incur costs and reasonable attorneys' fees in connection herewith, recovery of which Plaintiffs are entitled to according to proof.

156.    The Defendants' aforementioned conduct consisted of intentional misrepresentations, deceit, and/or concealment of material facts known to Defendants with the intention on the part of Defendants of thereby depriving Plaintiffs of property or legal rights or otherwise causing injury. Defendants, and each of them, acted fraudulently, maliciously and oppressively with a conscious, reckless and willful disregard, and/or with callous disregard, of the probable detrimental and economic consequences to Plaintiffs, and to the direct benefit of Defendants, knowing that Defendants conduct was substantially certain to vex, annoy, and injure Plaintiffs and entitle them to punitive damages under California Civil Code § 3294, in an amount sufficient to punish or make an example of Defendants.

    **WHEREFORE,** Plaintiffs pray for judgment against Defendants, and each of them, as hereinafter set forth.


## NINTH CAUSE OF ACTION
### DECLARATORY AND INJUNCTIVE RELIEF
### INCLUDING THAT DEFENDANTS LACK STANDING TO CONDUCT A
### NON-JUDICIAL FORECLOSURE
#### (Against All Defendants)

157.    Plaintiffs incorporate by reference the allegations set forth above and below.

158.    Plaintiffs allege that an actual controversy exists between Plaintiffs and Defendants. Plaintiffs desire a judicial determination of their rights and duties, and declaration as to the validity for the Subject Loan, Note, Deed of Trust, Loan modification and Defendants' right to

proceed with remedies to foreclose on the Note and Deed of Trust, inclusive of a non-judicial foreclosure of the Subject Property.

159.     Plaintiffs allege that a judicial declaration is necessary and appropriate at this time under the circumstances so Plaintiffs may ascertain their rights under the Note and Deed of Trust and Defendants' right to proceed with their alleged remedies, inclusive of the non-judicial foreclosure of the Subject Property.

160.     Plaintiffs allege that Defendants' actions have undermined their right in the Subject Property and have interfered, and continue to interfere, with Plaintiffs' right of possession as the owners of the Subject Property.

161.     Pecuniary compensation is warranted as Plaintiffs' residence is unique.

162.     Declaratory relief, including that the Plaintiffs are the prevailing party, is warranted.

163.     As a result of Defendants' conduct, Plaintiffs have suffered damages and seek Declaratory and Injunctive Relief that Defendants do not have the right to foreclose and that Defendants' purported power of sale is void and has no force or effect against the Subject Property.

     **WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, as set forth below:

          a.   For compensatory damages in an amount to be determined by proof at trial;

          b.   For special damages in an amount to be determined by proof at trial;

          c.   For general damages in an amount to be determined by proof at trial;

          d.   For statutory damages in an amount to be determined by proof at trial;

          e.   For treble damages in an amount to be determined by proof at trial;

          f.   For punitive damages;

          g.   For attorney's fees and costs of this action;

          h.   For declaratory and injunctive relief, including a declaration that Plaintiffs are the prevailing party and that Defendants are prevented from engaging in any sale, transfer, conveyance, actions or any conduct adverse to Plaintiffs' interest in the Subject Property;

i. For judgment rescinding Subject Loan and the corresponding security agreement and setting forth terms of restitution;

j. For the attempted foreclosure of the Subject Property to be deemed illegal and void;

k. For expungement of any and all foreclosure instruments relating to the Subject Property;

l. For removal of any and all derogatory information reported to any and all credit reporting agencies and/or bureaus relating to the transaction involved herein;

m. For restoration of Plaintiffs' credit scores and good name;

n. For any prejudgment or other interest according to law;

o. Such other relief as set forth and requested above, and

p. Any other and further relief that this Court deems equitable and proper.

**JURY DEMAND**

Plaintiffs hereby demand trial by jury.

DATED: January 31, 2011                    Respectfully submitted,

WHITE | MELLEN


_____
MATTHEW MELLEN
Attorney for Plaintiffs

**EXHIBIT B**

1  PETER J. SALMON (SBN 174386)
   THOMAS N. ABBOTT (SBN 245568)
2  PITE DUNCAN, LLP
   4375 JUTLAND DRIVE, SUITE 200
3  P.O. BOX 17935
   SAN DIEGO, CA 92177-0935
4  TELEPHONE: (858) 750-7600
   FACSIMILE: (619) 590-1385
5  E-Mail: tabbott@piteduncan.com

6  Attorneys for Defendants JPMORGAN CHASE BANK, N.A., as acquirer of certain assets and
   liabilities of Washington Mutual Bank from the Federal Deposit Insurance Corporation, as
7  Receiver for Washington Mutual Bank [*erroneously sued as JP MORGAN CHASE BANK, As
   Successor in Interest to, and d/b/a, WASHINGTON MUTUAL BANK, FA, and d/b/a CHASE
8  HOME FINANCE, LLC*] AND FEDERAL HOME LOAN MORTGAGE CORPORATION

9                    SUPERIOR COURT OF CALIFORNIA

10                    COUNTY OF SACRAMENTO

11  FAIZ A. JAHANI, an individual, and          Case No. 34-2011-00096173
    KHADIJA JAHANI, an individual,
12                                              **NOTICE TO ADVERSE PARTIES OF**
                  Plaintiffs,                   **REMOVAL TO FEDERAL COURT**
13
          v.
14
    JP MORGAN CHASE BANK, As Successor
15  in Interest to, and d/b/a, WASHINGTON
    MUTUAL BANK, FA, and d/b/a CHASE
16  HOME FINANCE, LLC; FEDERAL HOME
    LOAN MORTGAGE CORPORATION;
17  QUALITY LOAN SERVICE
    CORPORATION, JEFFERY SCOTT
18  STRACHAN; RUDOLFP TAN OMEGA; and
    DOES 1 through 100, inclusive,
19
                  Defendants.
20  /./.

21  /./.

22  /./.

23  /./.

24  /./.

25  /./.

26  /./.

27  /./.

28  /./.

                              -1-

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant FEDERAL HOME LOAN MORTGAGE CORPORATION ("Freddie Mac"), Defendant in the above-styled action, has this date filed in the United States District Court for the Eastern District of California - Sacramento Division a Notice of Removal, a copy of which is attached as **Exhibit A**, thereby effecting removal of this case.

Respectfully Submitted,

Dated: February 24, 2011

PITE DUNCAN, LLP

_____
Thomas N. Abbott
Attorneys for Defendants JPMORGAN CHASE BANK, N.A., as acquirer of certain assets and liabilities of Washington Mutual Bank from the Federal Deposit Insurance Corporation, as Receiver for Washington Mutual Bank [*erroneously sued as JP MORGAN CHASE BANK, As Successor in Interest to, and d/b/a, WASHINGTON MUTUAL BANK, FA, and d/b/a CHASE HOME FINANCE, LLC*] AND FEDERAL HOME LOAN MORTGAGE CORPORATION